Nos. <u>16-17282</u>, 17-15302, 17-15352

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

VICTOR PARSONS, *et al.*,

*Plaintiffs-Appellees*,

v.

CHARLES RYAN, *et al.*,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court
for the District of Arizona
No. 12-CV-00601
Hon. Roslyn O. Silver

_____

**PLAINTIFFS-APPELLANTS' RESPONSE TO MOTION TO DISMISS FOR
LACK OF MAGISTRATE JUDGE JURISDICTION**

_____

David C. Fathi
Amy Fettig
**ACLU NATIONAL PRISON PROJECT**
915 15th Street NW, 7th Floor
Washington, DC 20005
(202) 548-6603

Kathleen E. Brody
**ACLU FOUNDATION OF ARIZONA**
3707 N. 7th Street, Ste. 235
Phoenix, AZ 85014
(602) 650-1854

Donald Specter
Corene Kendrick
Rita K. Lomio
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, CA 94710
(510) 280-2621

*Attorneys for Prisoner Plaintiffs-
Appellees*

Maya S. Abela
Rose A. Daly-Rooney
**ARIZONA CENTER FOR
DISABILITY LAW**
177 North Church Avenue
Suite 800
Tucson, AZ 85701
(520) 327-9547

*Attorneys for Plaintiff-Appellee Arizona Center for
Disability Law*

# INTRODUCTION

Less than a week before this motion was filed, Defendants were held in contempt and fined more than $1.4 million for 1,445 failures to provide basic healthcare to incarcerated people in Arizona. Shortly before that contempt ruling — which was accompanied by an award of attorneys' fees to Plaintiffs' counsel and an order for court experts to oversee Defendants' provision of healthcare and the monitoring of Defendants' compliance with the settlement in this case — Defendants filed in the district court substantially the same motion that they file now with this Court, attempting to nullify all the work that Judge Duncan has done on this case. And before that, Defendants tried to have Judge Duncan disqualified from presiding over this case on the grounds of his alleged bias.[1] Both motions were rejected below.

All of these facts are absent from Defendants' motion. Instead, Defendants tell this Court that the last three and a half years of this case — and the three consolidated appeals pending before this Court — should be thrown out because of the process that led to the referral of this case to Judge Duncan. Because Judge Duncan was suggested by the parties as the appropriate judge to manage the complicated settlement in this case, Defendants say, he should not have actually

---

[1] Judge Duncan retired from the federal bench on June 22, 2018, and the case was reassigned to Judge Roslyn O. Silver. [Doc. 2911].

1

been allowed to oversee it. This perverse argument — which has been waived by years of delay in asserting it following Defendants' explicit consent to the referral of this case to Judge Duncan— misstates the law and has already been quickly rejected by two judges. [Docs. 2826, 2856]. This Court should do the same by denying Defendants' motion in case number 17-15302.[2]

## BACKGROUND

Defendants' motion does not include important information about recent developments in this case. Five days before filing this motion — whose arguments had already been rejected by two judges below — Defendants were held in contempt and fined more than $1.4 million for failing to comply with a court-approved stipulation about providing health care in Arizona's prisons. [Doc. 2898]. In addition, Defendants were ordered to hire outside experts to analyze why the stipulation has not been complied with (Doc. 2905), to submit a plan to implement the recommendations of the district court's Rule 706 expert on recruitment and retention of health care staff (Doc. 2904), to pay attorneys' fees and costs (Doc.

---

[2] Plaintiffs do not object to an order dismissing Defendants' pending appeals in Nos. 16-17282 and 17-15352, and consent to dismissal conditioned on Defendants' payment of the fees and costs that Plaintiffs incurred as a result of appellate proceedings. *See* Fed. R. App. P. 42(b) (allowing dismissal of "a docketed appeal if the parties file a signed dismissal agreement specifying how costs are to be paid and pay any fees that are due. … An appeal may be dismissed on the appellant's motion on terms agreed to by the parties or fixed by the court.").

2902), and to reinstall boxes to collect prisoner requests for health care. [Doc. 2901].

The court also ordered the parties to submit the names of candidates to serve as the court's Rule 706 expert to analyze the methodology used to monitor compliance with the parties' settlement agreement. [Doc. 2900].

Though Defendants' current motion is ostensibly limited to the three appeals currently before this Court, a finding here that Judge Duncan's rulings were a nullity because he lacked jurisdiction would obviously be quickly used to undo these recent rulings, and indeed all proceedings in this case for the last three and a half years. This context is critically important because the United States Supreme Court has instructed that "gamesmanship" like Defendants' should be considered when evaluating belated attempts to undermine the referral of a case to a magistrate judge by a party who has sustained adverse rulings. *Roell v. Withrow*, 538 U.S. 580, 590 (2003).

**A. Judge Humetewa refers this case to Judge Duncan.**

Plaintiffs filed this class action in March 2012 on behalf of over 33,000 men and women housed in Arizona state prisons — people who are entirely dependent on the state for their health care. [Doc. 1]. The case was first assigned to Judge Neil Wake and Magistrate Judge Mark Aspey. [Doc. 4]. Two years later, the parties each requested a settlement conference with a magistrate judge (Docs. 961,

3

977); Plaintiffs requested that the settlement be facilitated by Magistrate Judge Duncan. [Doc. 977 at 2]. Judge Wake made that referral for settlement on June 27, 2014. [Doc. 978].

The negotiations led by Judge Duncan ultimately produced a settlement of the case. But before that settlement was memorialized by a stipulation, the case was reassigned from Judge Wake to Judge Humetewa on August 11, 2014. [Doc. 1074]. After that reassignment, the parties presented the stipulation to Judge Humetewa on October 14, 2014. [Doc. 1185]. Under the stipulation, Defendants must measure and report, on a monthly basis, their compliance with 103 health care performance measures at ten state-run prisons. [Doc. 1185 ¶ 9; Doc. 1185-1 at 8–15 (Performance Measures)]. The stipulation also asked that the case henceforth be overseen by Magistrate Judge Duncan. [Doc. 1185 ¶ 29]. After the stipulation was filed, Judge Humetewa, at the parties' joint request (Doc. 1186), issued an order on October 22, 2014, formally referring the case to Judge Duncan pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. [Doc. 1194]. Defendants raised no objection to this referral.

**B. Defendants' motion to disqualify is denied as a "meritless distraction."**

"Because of pervasive and intractable failures to comply with the Stipulation," in October 2017, Judge Duncan issued an order to show cause why the court "should not impose a civil contempt sanction of $1,000 per incident of

4

non-compliance commencing the month of December 2017." [Doc. 2373 at 1, 4].
Evidentiary hearings on the order to show cause were held on February 28, March
26 and 27, and April 10, 2018. [Docs. 2659, 2722, 2735, 2757]. The issue of
contempt was argued and submitted on April 10, 2018. [Doc. 2757 at 2].

On February 23, 2018, just days before the February 27–28 evidentiary
hearings on both contempt and related failures in their self-monitoring, Defendants
filed a motion to disqualify Judge Duncan from all further proceedings. [Doc.
2641]. Judge Duncan denied that motion as "a meritless distraction" and noted that
"[a]mid Defendants' continuing failure to meet many of the requirements of the
Stipulation, Defendants devote[d] energy and time to an effort to remove the judge
they chose to hold their feet to the fire." [Doc. 2791 at]. The contempt hearings
continued.

## C. Two judges reject Defendants' efforts to undo the referral to Judge Duncan.

On May 9, 2018, and before issuing final rulings in this case, Judge Duncan
informed the parties in open court that he was leaving the bench for health reasons.
[5/9/18 Tr. at 5–6]. Nine days later, Defendants filed a motion asking Judge
Humetewa to vacate her referral of this case to Judge Duncan from almost four
years ago because of a lack of "subject matter jurisdiction," and to stay all further
proceedings.  [Doc. 2825]. The chief legal authority in the motion was a case from

the Seventh Circuit Court of Appeals, *Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513 (7th Cir. 2003).

On May 19, 2018, Judge Duncan denied the stay request, explaining that *Hatcher* "is neither controlling authority and, in any event, is not persuasive given that it does not address the factual scenario presented here." [Doc. 2826]. Two days later, Defendants filed a motion for Judge Humetewa to "expedite" consideration of their motion. [Doc. 2829].[3]

Two weeks later, on June 5, 2018, Judge Humetewa rejected Defendants' arguments. [Doc. 2856]. Judge Humetewa found that "*Hatcher* is factually and legally distinguishable from this case." *Id*. at 1. The court went on to note that "Defendants' position is also foreclosed by the Supreme Court's decision in *Roell v. Withrow*, 538 U.S. 580, 587 (2003), because while there does not appear to be any defect in the process by which Judge Duncan became involved in this case, and even if there was one, it was cured by the parties' explicit consent to his jurisdiction in their standalone joint motion at Doc. 1186." *Id*. at 1–2.

---

[3] Defendants also notified this Court of this pending motion and said they would "notify the Court once the district court has ruled." [Dkt. 107 at 4]. Defendants did not do so; instead, Plaintiffs notified this Court on June 18, 2018, that the motion had been denied. [Dkt. 109-1, 109-2].

### D. Contempt findings.

Seventeen days after Judge Humetewa's rejection of Defendants' second attempt to have Judge Duncan removed from this case, Judge Duncan issued six rulings: a finding of contempt, an order for Defendants to hire experts on the provision of health care, an order to submit a plan to implement the recommendations of the court's Rule 706 expert on recruitment and retention of health care staff, an order that the parties submit names of potential Rule 706 experts on monitoring, an award of attorneys' fees, and an order for Defendants to replace collection boxes for health care requests. [Docs. 2898, 2905, 2904, 2900, 2902, 2901].

In the contempt order, Judge Duncan concluded that "[t]he inescapable conclusion is that Defendants are missing the mark after four years of trying to get it right. Their repeated failed attempts, and too-late efforts, to take their obligation seriously demonstrate a half-hearted commitment that must be braced." [Doc. 2898 at 20]. Judge Duncan further found that "the State turned to a private contractor [Corizon] which has been unable to meet the prisoner's health care needs. Rather than push its contractor to meet those needs, the State has instead paid them more and rewarded them with financial incentives while limiting the financial penalties for non-compliance." *Id*. Judge Duncan then noted there were 1,445 relevant

violations of the stipulation between December 2017 and February 2018 and fined Defendants $1,000 for each violation. *Id*. at 20–24.

Defendants' motion to dismiss the appeals pending before this Court followed five days later.

## ARGUMENT

This case was appropriately referred to Judge Duncan more than three-and-a-half years ago. The referral was done at the parties' explicit request. Until recently, Defendants raised no objection to the referral. As a result, they have waived any ability to raise it now. And in any event, the referral fully complied with the Federal Magistrates Act and the Local Rules of the Arizona District Court. Defendants' tangle of arguments otherwise — that the referral of this case to Judge Duncan lacked the required "special designation" (which also has to be a "random designation," Def. Mot. at 17–18) because the parties "hand-picked" Judge Duncan — misinterprets the law and selectively omits that Judge Humetewa, the district judge overseeing this case at the time, issued an order of referral that gave Judge Duncan full power over this case. [Doc. 1194].

### A. Defendants waived this argument by not raising it for years.

This case was referred to Judge Duncan three-and-a-half years ago by an order issued by Judge Humetewa (Doc. 1194) at the parties' joint request. [Doc.

1185 ¶ 29]. By explicitly consenting to this referral, Defendants have waived their ability to now argue that the referral was improper.

This Court has held that referrals to magistrate judges implicate a party's "guarantee of an impartial and independent federal adjudication" under Article III of the United States Constitution and is "subject to waiver." *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 567 n.10 (9th Cir. 2012) (citing *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 848 (1986)). This Court settled the issue long ago: "The maxim that parties may not consent to the jurisdiction of federal courts is not applicable [to referrals under the Federal Magistrates Act]. The rule is irrelevant because it applies only where the parties attempt to confer upon an Article III court a subject matter jurisdiction that Congress or the Constitution forbid." *Pacemaker Diagnostic Clinic of America v. Instromedix*, 725 F.2d 537, 543 (9th Cir. 1984) (Kennedy, J.) (en banc) (citations omitted). *See also Anderson v. Woodcreek Venture, Ltd.*, 351 F.3d 911, 914 (9th Cir. 2003) ("The voluntary consent requirement [in 28 U.S.C. § 636(c)(1)] was designed to assuage constitutional concerns, as Congress did not want to erode a litigant's right to insist on a trial before an Article III judge.").

By their explicit consent to referring this case to Judge Duncan, Defendants gave up their ability to complain about the referral. Their proffered excuse — that they didn't discover a case from 2003 until 2018, Def. Mot. at 5 — cannot be

9

accepted. And the cases Defendants cite from this Court suggesting that they are allowed to raise this issue years later all involve scenarios where one party had *not* consented to a magistrate judge referral[4] — a very different situation than here, where consent to the referral was explicit. *See*, *e.g.*, *Anderson*, 351 F.3d at 914 ("Consent thus emerges from the statute as the touchstone of magistrate judge jurisdiction.").

## B. The referral of this case to Judge Duncan complied with the law.

Defendants try to cast the referral of this case to Judge Duncan as wild justice that did not follow the rules. This is entirely incorrect. The two requirements of the Federal Magistrates Act — a general "special designation" for a magistrate judge to handle cases and consent of the parties for him to handle their case — were followed. And so were the Arizona District Court Local Rules, which specifically allow for the process that was used here.

---

[4] *See Anderson*, 351 F.3d at 911 ("the record casts into doubt whether Anderson voluntarily consented to the magistrate judge's jurisdiction to enter judgment as required by 28 U.S.C. § 636(c)(1)"); *Nasca* v. *Peoplesoft*, 160 F.3d 578, 580 (9th Cir. 1998) ("Because the requisite consent is lacking here, the magistrate judge acted without jurisdiction …"); *Williams* v. *King*, 875 F.3d 500, 505 (9th Cir. 2017) ("We find no basis for an exception to the general requirement that all parties must consent for jurisdiction to vest under § 636(c)(1)."); *Allen* v. *Meyer*, 755 F.3d 866 (9th Cir. 2014) ("It is undisputed that the officers furnished neither express nor implied consent to jurisdiction before a magistrate judge."). A final case from Defendants considered a section of the Federal Magistrates Act, 28 U.S.C. § 636(b), that is not implicated here. *See Reynaga* v. *Cammisa,* 971 F.2d 414, 417 (9th Cir. 1992).

### 1.    Federal Magistrates Act

Defendants argue that Judge Duncan oversaw this case without the "designation" required by the Federal Magistrates Act, 28 U.S.C. § 636(c)(1). *See* Def. Mot. at 17–18. But Defendants misunderstand what that statute requires: the "special designation" referred to in the statute is a general authorization from the district court to exercise power over civil cases, not a case-specific referral to a magistrate judge. And, even if their understanding was correct, Defendants misrepresent what occurred here: after all parties explicitly consented to Judge Duncan overseeing this case, the assigned district court judge issued an order of referral. [Doc. 1194].

To begin, the Federal Magistrates Act allows a full-time magistrate judge to "conduct any or all proceedings" in a case if two requirements are met. 28 U.S.C. § 636(c)(1). The magistrate judge must be "specially designated to exercise such jurisdiction by the district court or courts he serves." *Id*. And there must be "the consent of the parties." *Id*. Both requirements were met here.

First, the "special designation" required by the Federal Magistrates Act is a general status given to a magistrate judge by the district court where he or she works. And "once designated, the magistrate became a 'generalist,' competent to preside over *any* civil proceeding." 12 Charles Alan Wright, Arthur Miller, &

11

Mary Kay Kane, *Federal Practice & Procedure* § 3071 (2d ed., April 2018 update) (emphasis added).

Defendants intimate that this designation is the referral of a particular case to a magistrate judge. *See* Def. Mot. at 14. But the plain language of the statute says otherwise. The Federal Magistrates Act explains how a "special designation" is to be made: "by the concurrence of a majority of all the judges of such district court" or the chief judge if "there is no such concurrence." 28 U.S.C. § 636(c)(1). This process cannot be describing the reference of a particular case to a magistrate judge; it instead lays out how to authorize magistrate judges in a particular district to fully handle cases under the Federal Magistrates Act. This "special designation" occurs one time in the abstract, not with every case.[5]

---

[5] If more confirmation of this rule is needed, the statute provides it. Once "a magistrate judge is designated to exercise civil jurisdiction," the parties in each new civil case must be notified by the clerk of court that a magistrate judge is available. 28 U.S.C. § 636(c)(2). This structure shows that the special designation required under the Federal Magistrates Act is a general granting of authority to a magistrate judge, not referral of a specific case. If the special designation were not a general status, it would require "the concurrence of a majority of all the judges of such district court" or the chief judge if there is "no such concurrence," 28 U.S.C. § 636(c)(1), to designate a magistrate judge to each particular case and then have the clerk of court inquire whether the parties consented to that designation. Such a sequence makes no sense and is not how business is conducted in the district courts. This conclusion is further confirmed by the use of variants of "refer" — and not "designate" — in the same section of the Federal Magistrates Act to describe specific cases being handled by a magistrate judge. *See* 28 U.S.C. § 636(c)(2) ("Rules of court for the *reference* of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent."), (3) ("Upon entry of judgment in any case *referred* under paragraph (1) of this subsection, an

Here, the requisite special designation can be found in Local Rule 72.2(a)(13), which grants magistrate judges in the District of Arizona the full authority allowed in 28 U.S.C. § 636(c) upon consent of the parties. LRCiv. 72.2(a)(13). *See Columbia Record Productions v. Hot Wax Records*, 966 F.2d 515, 517 (9th Cir. 1992) ("[W]e must consider the possibility of [special] designation under the local rules.").

And in any event, even if the "special designation" in the Federal Magistrates Act required as a jurisdictional matter that a district judge order referral of a specific case to a magistrate judge, there was such an order here by Judge Humetewa. [Doc. 1194].

Finally, there is no dispute here that there was the required "consent of the parties." 28 U.S.C. § 636(c)(1). Defendants concede as much in their motion and their explicit written consent can be found in the joint stipulation and the parties' joint request to refer the case to Judge Duncan. [Doc. 1185 ¶ 29; Doc. 1186]. And it is "[c]onsent" that is "the touchstone of magistrate judge jurisdiction." *Wilhelm*

---

aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court."), & (4) ("The court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a *reference* of a civil matter to a magistrate judge under this subsection.") (emphases added).

13

*v. Rotman*, 680 F.3d 1113, 1119 (9th Cir. 2012) (quotation marks and citation omitted)).

### 2. Local Rules

Defendants argue that the referral of this case to Judge Duncan did not follow the Arizona District Court Local Rules because Judge Duncan was not randomly assigned to the case. But Defendants cite only half of the relevant rule. And the full rule does not require what Defendants say it does.

The Local Rules do require random assignment — but only when a case is newly filed. Referrals under 28 U.S.C. § 636(c) must be "randomly assigned" to a magistrate judge when a case is first filed but may also be "reassigned to a Magistrate Judge with the District Judge's approval." LRCiv 72.2(a)(13).[6] A district judge's authority to refer a case to a magistrate judge in a non-random fashion is also confirmed in LRCiv 73.1(d), which specifies that a randomly assigned magistrate judge remains on a case "unless otherwise ordered by the Court."

---

[6] The full text of this Local Rule: "With the express written consent of the parties pursuant to 28 U.S.C. § 636(c), a Magistrate Judge may hear and determine all motions, conduct the trial, and enter findings of fact, conclusions of law, and final judgments when the case is either randomly assigned by the Clerk to a Magistrate Judge upon the filing of the case or when a case is initially assigned to a District Judge and thereafter the case is reassigned to a Magistrate Judge with the District Judge's approval." LRCiv 72.2(a)(13). This is the rule's current text and is unchanged from 2014, when this case was referred to Judge Duncan.

14

And Defendants' argument that random assignment is required by the Federal Magistrates Act is not accurate. *See* Def. Mot. at 8–9, 17–18. Though random assignment is an appropriate practice for initial assignment of a case, it is not mentioned in the Federal Magistrates Act. *See* 28 U.S.C. § 636(c). Indeed, the Federal Magistrates Act was created to "provide flexibility," not the rigidity that Defendants espouse. Peter G. McCabe, *The Federal Magistrate Act of 1979*, 16 Harv. J. Legis. 343, 380 (1979). This is why the Local Rules allow a district judge to reassign a case to a magistrate. And that was what happened here: after this case was reassigned to Judge Humetewa (Doc. 1074), she referred it in its entirety to Magistrate Judge Duncan. [Doc. 1194].

## C. *Hatcher v. City of Indianapolis* is inapposite.

Aside from incorrect arguments about the Federal Magistrates Act and the Local Rules, Defendants' arguments hinge on one case from the Seventh Circuit: *Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513 (7th Cir. 2003).

Defendants mischaracterize *Hatcher*. The problem identified there was not, as Defendants have it, that the magistrate judge was "hand-picked" but that no court was ever involved in the referral of a discrete issue to the magistrate judge. Here, district judges were involved at every step: referring the case for settlement, approving that settlement, and then referring the whole case to Judge Duncan at the parties' explicit suggestion and consent.

15

By contrast, *Hatcher* turned on whether the parties could "override" the usual process for referring a case to a magistrate judge by "substitut[ing] their own chosen magistrate judge." 323 F.3d at 518. In *Hatcher*, the case had settled except for a dispute about attorneys' fees. The settlement agreement between the parties — with no judicial input — specified a particular magistrate judge to resolve the fees issue. *Id*. at 514–15. No document was filed requesting that the court order the referral and the district court judge apparently never issued an order about the referral, instead merely saying that he would give the magistrate judge a "heads up." *Id*. at 516.

The Seventh Circuit disapproved this informal process. "[M]agistrate judge assignment is a matter for the court to decide, not the parties." *Id*. at 518. As a result, "it is the court, and not the parties, that has the power to confer general or specific duties upon an individual magistrate judge." *Id*. The Seventh Circuit explained that "two prerequisites exist for a valid reference to a magistrate judge: (1) consent of the parties and (2) special designation by the court. Nothing in that system explicitly supports the idea that the parties may commandeer this entire process in lieu of the court." *Id*. (citation omitted).

No such commandeering happened here. When the parties consented to referral here, Judge Duncan had already been associated with this case — a very different scenario from *Hatcher* where the parties picked an entirely new

16

magistrate judge to resolve a particular issue. The referral of this case to Judge Duncan was approved by Judge Humetewa, the district court judge assigned to the case, after the parties explicitly asked that Judge Duncan continue with the case because of his "unique ability to effectuate the parties' intent in any future proceedings." [Doc. 1186 at 2].

Not only was Judge Humetewa's referral of the case to Judge Duncan not objectionable, it was a sound use of judicial resources which was memorialized in an order of referral. Though Judge Humetewa's order of referral is conspicuously absent from much of Defendants argument, *see, e.g.*, Def. Mot. at 9, 16, it is a key reality that requires rejection of their argument under *Hatcher*.

But even if *Hatcher* compelled a different result, it is not binding on this Court: it has not been cited by any other Court of Appeals since its issuance fifteen years ago and it has been fatally undermined by the United States Supreme Court's decision in *Roell v. Withrow*, 538 U.S. 580 (2003), which followed *Hatcher* by a few weeks. *Roell* held that "a defect in the referral to a full-time magistrate judge under § 636(c)(2) does not eliminate that magistrate judge's 'civil jurisdiction' under § 636(c)(1) so long as the parties have in fact voluntarily consented." 538 U.S. at 587. And this Court has held the same. *See Wilhelm*, 680 F.3d at 1119 ("[c]onsent, then, is the touchstone of magistrate judge jurisdiction" (quotation marks and citation omitted)).

17

Defendants argue that *Roell* has no impact on *Hatcher* because a later appellate decision in *Hatcher* did not cite *Roell*. *See* Def. Mot. at 14–15. But that proves nothing: the magistrate judge's authority had been settled by the previous appeal and was no longer a live issues in the case.

And Defendants further argue that *Roell* only addressed "procedural" flaws in magistrate referrals. Def. Mot. at 14. But *Roell* was not so narrow. After all, it addressed the waiver of what this Court has described as one's constitutional right to trial by Article III judge. *See Pacemaker*, 725 F.2d at 541. *Roell* found that such a constitutional right could be waived implicitly by a party's conduct during litigation. *See* 538 U.S. at 590. The circumstances allowing for the forsaking of such an important right is hardly a dry procedural issue. As Judge Humetewa held below, even assuming that there was a problem with the referral to Judge Duncan here, *Roell* commands that the parties' explicit consent cured any defects.

*    *    *

Defendants' arguments raise bright red flags. The Supreme Court has highlighted the risk of "gamesmanship" when a party indulges in "the luxury of waiting for the outcome before denying the magistrate judge's authority." *Roell*, 538 U.S. at 590. Courts should not allow a party to retroactively invent a flaw in a magistrate judge referral that would allow "a full and complicated trial [to be] wasted at the option of an underserving and possibly opportunistic litigant." *Id.*

18

That unjust outcome is what Defendants want here. Though they claim, without citing any evidence, that they have made "significant improvements" to Arizona's prison healthcare delivery system, Def. Mot. at 19 n. 8, that assertion flies in the face of Judge Duncan's contempt finding that "wide-spread and systemic failures remain" as Defendants show "nonchalance about addressing on-going failures to comply" with the settlement. [Doc. 2898 at 19–20].

## CONCLUSION

Defendants' request for a do-over in this case comes far too late. And their arguments are not accurate statements of the law or the facts of this case. The motion to dismiss No. 17-15302 should be denied.

Dated:      July 9, 2018      Respectfully submitted,

PRISON LAW OFFICE

By:  s/ Donald Specter
Donald Specter

*Attorney for Prisoner Plaintiffs-Appellees*

ARIZONA CENTER FOR
DISABILITY LAW

By:  s/ Maya S. Abela
Maya S. Abela

*Attorney for Plaintiff-Appellee
Arizona Center for Disability Law*

19

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Motion for Judicial Notice and accompanying exhibits with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 9, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Donald Specter

Donald Specter